**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| SOLOMAN JOHNSON, | ) | |
| | ) | Civil Action No. 11 - 1376 |
| Plaintiff, | ) | |
| | ) | District Judge Joy Flowers Conti |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BRIAN V. COLEMAN, DR. | ) | |
| HERBICK, and ROBERT TRETINIK, | ) | ECF Nos. 16, 18 |
| | ) | |
| Defendants. | | |


**REPORT AND RECOMMENDATION**

I.    **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motions to Dismiss

filed by Defendant Dr. Herbick (ECF No. 16) and Defendants Coleman and Tretinik (ECF No.

18) be granted.  Furthermore, it is recommended that dismissal of Johnson's Complaint against

all Defendants should be with prejudice as it is clear from the record that granting Johnson leave

to amend would be futile.

II.    **REPORT**

   **A.  Statement of Relevant Facts & Procedural History**

Plaintiff, Solomon Johnson ("Johnson"), filed this lawsuit against Defendants Brian V.

Coleman ("Coleman"), Superintendent at the State Correctional Institution at Fayette (SCI-

Fayette); Dr. Herbick, Medical Director at SCI-Fayette; and Robert Tretinik ("Tretinik"),

Corrections Healthcare Administrator (CHCA) at SCI-Fayette to enforce his rights under the

Eighth Amendment to the Constitution of the United States, specifically his right to be free from

cruel and unusual punishment through deliberate indifference toward a medical condition while incarcerated. Johnson seeks to recover punitive, nominal, and compensatory damages for violation of his constitutional rights. (ECF No. 5 at 3.)

Dr. Herbick filed a Motion to Dismiss and supporting Brief on March 28, 2012. (ECF Nos. 16, 17.) Coleman and Tretinik filed a Motion to Dismiss and a supporting Brief on April 2, 2012. (ECF Nos. 18, 19). Johnson filed a Brief in Opposition to both Motions to Dismiss on April 13, 2012. (ECF No. 20.)

According to the Complaint and attached exhibits, Johnson has been diagnosed with a history of chronic right subclavian stenosis secondary to thrombosis[1] at least once by Dr. Victor Diaz, pre-incarceration. (ECF No. 5-1 at 2.) Dr. Diaz recommended surgical intervention in order to maintain good venous flow and prevent dysfunction of right internal jugular vein because failure to do so may lead to circulation defects in the arm and a high risk of blood clotting and loss of limb function. (ECF No. 5-1 at 1.) Further, lack of treatment could lead to potential effects on Johnson's brain functioning. (ECF No. 5-1 at 1.)

On January 12, 2009, Dr. Diaz wrote to the Medical Director of the Pennsylvania Department of Corrections reiterating his initial diagnosis and suggesting statin medication, lipids and liver transammase tested every six months, and venous Doppler ultrasounds on a yearly basis. (ECF No. 5-1 at 2.) Dr. Diaz recognized in this letter that Johnson had switched

---

[1] Johnson's diagnosis is of an abnormal narrowing of an artery located under his right clavicle, which can cause blood clots. Subclavian refers to that which is "situated under the clavicle or collar bone," or "pertaining to the subclavian artery…." 5 J.E. Schmidt, Attorneys' Dictionary of Medicine S-338 (Matthew Bender 2011). Stenosis is "the abnormal narrowing of a body passage, opening, canal, or duct. It is usually due to an overgrowth or shrinkage of the tissue around it…." 5 J.E. Schmidt, Attorneys' Dictionary of Medicine S-291 (Matthew Bender 2011). Thrombosis is "[t]he development or the presence of a blood crust, clot or plug in one of the cavities of the heart or in a blood vessel (an artery or vein). The crust, plug or clot, known as thrombus, is formed from coagulated (clotted) blood and is attached to the wall of the cavity or vessel." 6 J.E. Schmidt, Attorneys' Dictionary of Medicine T-116 (Matthew Bender 2011).

medication to daily aspirin because Johnson refused to continue the medication he was taking at that time due to his involvement in contact sports. (ECF No. 5-1 at 2.) Johnson was treated pre-incarceration for this condition and claims he requires lifetime annual ultrasound therapy with blood thinners, specifically aspirin. (ECF No. 5 at 2.) Johnson claims to have been deemed a "chronic care inmate" and received an ultrasound for his condition on September 4, 2007, while incarcerated at SCI-Albion. (ECF No. 5 at 2.) Johnson has been incarcerated at SCI-Fayette since June 28, 2008. (ECF No. 5 at 2.)

Johnson claims that Dr. Herbick advised that an annual ultrasound was necessary only if Johnson was experiencing pain. Specifically, Johnson alleges that Dr. Herbick stated, "If you['re] not having pain you['re] not getting another clot, so you don't need this procedure." (ECF No. 5 at 2.) Dr. Herbick allegedly scheduled a video conference with a vascular surgeon on Johnson's behalf on September 25, 2008. (ECF No. 5 at 2.) After the video conference, Dr. Herbick recommended no further intervention.

In 2009, Johnson complained of a lump formed in the upper inside of his left leg and pain throughout his left leg and hip area. (ECF No. 5 at 2.) Johnson expressed concerns that these were symptoms of clotting in his lower leg, indicative of his underlying condition. (ECF No. 5 at 2.) Johnson was prescribed Naprosyn and scheduled for an examination in response to his complaints. (ECF No. 5-1 at 4.) Tretinik, the CHCA, responded to Johnson's inmate grievance on July 13, 2009, stating that no lump had been found at Johnson's groin area and X-rays taken of Johnson's knee returned negative. (ECF No. 5-1 at 4.) Johnson alleges that Tretinik then suggested that if these assessments were accurate, Naprosyn should be continued. (ECF No. 5 at 3.) Johnson contends that a vascular surgeon did not consult him about the lump and lower body

pain and a physical examination was necessary.  (ECF No. 5 at 3.)  Further, Johnson contends that these actions constitute intentional deprivation of treatment, specifically ultrasound care.

**B.  Discussion of Legal Authority**

1.  <u>Statute of Limitations</u>

Johnson brings suit pursuant to 42 U.S.C. § 1983 and claims that his Eighth Amendment rights were violated by Coleman, Tretinik, and Dr. Herbick.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…" but does not provide any applicable statute of limitations.  42 U.S.C. § 1983 (2006).  Title 28 U.S.C. § 1652 provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as the rules of decision in civil actions in the courts of the United States, in cases where they apply," and 42 U.S.C. § 1988 further provides that

> the protection of all persons in the United States in their civil rights…shall be exercised and enforced in conformity with the laws of the United States…but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil…cause is held…shall be extended to govern the said courts in the trial and disposition of the cause….

28 U.S.C. § 1652 (2006); 42 U.S.C. § 1988 (2006).

In fact, the Supreme Court stated that, "in 42 U.S.C. § 1988 Congress had plainly instructed the federal courts to refer to state law when federal law provides no rule of decision for actions brought under § 1983…."  <u>Chardon v. Soto</u>, 462 U.S. 650, 657 (1983) (citing <u>Bd. of</u>

Regents of the Univ. of the State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)).  Thus, "civil rights actions under 42 U.S.C. §§ 1983, 1985, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court" and the "controlling statute of limitations in an action pursuant to 42 U.S.C. § 1983 is the most analogous one provided by state law."  Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977) (citing Polite v. Diehl, 507 F.2d 119, 122 (3d Cir. 1974)); Eubanks v. Clarke, 434 F.Supp. 1022, 1030 (E.D. Pa. 1977).

In this case, the applicable statute of limitations for "[a]ny other action or proceeding to recover damages for injury to person…which is founded on negligent, intentional, or otherwise tortious conduct…." is two (2) years.  42 Pa. Cons. Stat. Ann. § 5524 (West 2004); Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  In addition, a § 1983 cause of action "accrues when the plaintiff knew or should have known of the injury upon which its action is based."  Sameric, 142 F.3d at 599.  However, the continuing violation doctrine must be considered to properly address tolling of the statute of limitations.

The continuing violation theory is an "equitable exception to the timely filing requirement" that applies "when a defendant's conduct is part of a continuing practice."  West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995); Brenner v. Local 514, United Bhd. of Carpenters and Joinders of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).  This doctrine allows untimely actions to be considered timely "so long as the last act evidencing the continuing practice falls within the limitations period" by instructing the court to "grant relief for the earlier related acts that would otherwise be time barred."  Brenner, 927 F.2d at 1295.  The Third Circuit has held that "[t]o prevail on a continuing violation theory, however, the plaintiff must show

more than the occurrence of isolated or sporadic acts…." <u>Jewett v. Int'l Tel. and Tel. Corp.</u>, 653 F.2d 89, 91 (3d Cir. 1981).

The Third Circuit has also identified three factors for courts to consider when addressing the issue of whether a defendant's acts constitute a continuing practice or sporadic incidents. <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001). These factors include:

> (1) subject matter jurisdiction – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of 'degree of permanence' is the most important of the factors.

<u>Id.</u> Although the continuing violations doctrine has been applied most often to discrimination claims, it is applicable in other contexts, including procedural due process claims brought under § 1983. <u>Id.</u> at 292 (citing <u>Centifanti v. Nix</u>, 865 F.2d 1422, 1432-33 (3d Cir. 1989)).

Title 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Third Circuit has noted that although "this Court has not spoken on the issue, several courts of appeals have concluded that, because exhaustion is mandatory under the PLRA, the statute of limitations applicable to § 1983 actions must be tolled while a prisoner exhausts." <u>Shakuur v. Costello</u>, 230 F. App'x 199, 201 (3d Cir. 2007) (citing <u>Brown v. Valoff</u>, 422 F.3d 926, 942-43 (9th Cir. 2005)). However, the Supreme Court has held that a cause of action accrues for § 1983 claims when the wrongful act or omission results in damages. <u>Wallace v. Kato</u>, 549 U.S. 384, 391 (2007). The Third Circuit has held that a "claim accrue[s] when [the

plaintiff] knew or had reason to know of the injury that constitutes the basis of [an] action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982); Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989); Smith v. Holtz, 856 F. Supp. 227, 231 (M.D.Pa. 1994).

### 2. Deliberate Indifference Claims Against Medical Personnel

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true" and "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions…." Id. at 545. Further, the Supreme Court has held that, for motions to dismiss, courts "must take all the factual allegations in the complaint as true, [but] are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Additionally, the Court has held that *pro se* complaints, such as the complaint at bar, should be held to "less stringent standards than formal pleadings drafted by lawyers," but a lowered standard does not alleviate the complainant from the burden of a well-pleaded complaint in the face of a motion to dismiss. Haines v. Kerner, 404 U.S. 519, 520 (1972).

Johnson's claim arises from an alleged violation of his Eighth Amendment right to be free from "cruel and unusual punishments" when Defendants were allegedly deliberately indifferent toward his medical needs. U.S. Const. amend VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

7

wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  The Court has also held that "accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 32 (1993).

The Court has further expounded on prisoners' Eighth Amendment rights, stating that

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

Estelle, 429 U.S. at 106.  The Court provided additional guidance, stating that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Id. at 107.  In fact, neither "inadvertence [n]or error in good faith…characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Prisoners "claiming that the conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials," and thus "a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." Wilson v. Seiter, 501 U.S. 294, 294-97 (1991) (citing Estelle, 429 U.S. at 106). Therefore, a plaintiff's complaint must include some factual allegations of the two elements requisite to establish a claim of deliberate indifference, i.e., (1) a serious medical need and (2) a culpable mental state establishing deliberate indifference.

The Third Circuit has held that a serious medical need is established where it has been diagnosed by a physician as requiring treatment, easily recognizable by a lay person, or by "reference to the effect of denying the particular treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citing Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979)). A serious medical need may also be identified where there is "unnecessary and wanton infliction of pain," or where "denial or delay causes an inmate to suffer a life-long handicap or permanent loss…." Id. (citing Estelle 429 U.S. at 103).

The second element, deliberate indifference, has been consistently held to a standard above "mere allegations of malpractice." Id. at 346. However, deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment…and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Id. at 346 (citing Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976), cited with approval in Estelle, 429 U.S. at 105). Further, "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment….'" Id. at 347 (citing West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978)). The Supreme Court has held that deliberate indifference should be found where a prison official "knows of and disregards an excessive risk to inmate health or safety; the official [is] both…aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [has] also [drawn] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1970).

Further, the test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients" and "[c]ourts will disavow any attempt to second-guess the propriety or adequacy of a particular

course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Even so, preventing an inmate from receiving recommended treatment or "denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment…violates the constitutional standard enunciated in Estelle." Pierce, 612 F.2d 754 at 762; Keve, 571 F.2d at 163. Additionally, deliberate indifference has been found where "the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)). Although treatment plans from different physicians may conflict, "no claim is stated when a doctor disagrees with the professional judgment of another doctor." Napoleon, 897 F.2d at 110.

Thus, where an inmate has a serious medical need, prison officials are required to provide a level of care that is based on an acceptable professional assessment of the inmate. Although the deliberate indifference standard does not sag to the level of negligence, prison officials may not refuse to treat or treat with an eye to efficiency if it would pose an unnecessary or excessive risk to the inmate's health or safety.

   3.  Deliberate Indifference Claims Against Non-Medical Personnel

It has been established in the Third Circuit that Superintendents and Medical Health Care Administrators are "undisputably administrators, [and] not doctors." Thomas v. Dragovich, 142 F. App'x 33, 39 (3d Cir. 2005). However, the Third Circuit has held that a plaintiff prisoner's complaint survived a motion to dismiss where a Chief Healthcare Administrator "allowed the issuance of a latex catheter despite…knowledge" of the prisoner's allergy to latex. Mutschler v.

SCI Albion CHCA Health Care, 445 F. App'x 617, 621 (3d Cir. 2011). Thus, for a non-medical prison official to be subject to a claim of deliberate indifference, the complaint must include sufficient factual allegations of the administrator's actual knowledge of "a substantial risk of serious harm" and of the official's disregard for that risk "by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 825.

The Third Circuit has held that "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" and "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the plaintiff "bears the burden of proving (and hence pleading) facts supporting the defendants' mental states." Id. Further, the Third Circuit has held that where a prisoner wrote letters to a Superintendent and State Commissioner for Corrections, "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

In order for non-medical personnel to be found liable for deliberate indifference, the plaintiff must show that the personnel "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating (or not treating)'" the prisoner. Thomas, 142 F. App'x at 39 (citing Spurill, 372 F.3d at 236). Although forwarding grievance forms to medical staff or speaking with them directly may be helpful, "a failure to undertake such actions or others like them does not constitute deliberate indifference, and may not be legally recognized as such." Id. (citing Durmer, 991 F.2d at 69). Additionally, "[a] defendant in a civil rights

action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).


### C. Defendant Dr. Herbick's Motion to Dismiss

1. Statute of Limitations

Dr. Herbick argues that Johnson's Complaint should be barred by the applicable statute of limitations of two years. Dr. Herbick contends that because Johnson did not correctly file a motion to proceed *in forma pauperis* until December 27, 2011, Johnson's claims must be limited to events that took place no later than December 27, 2009. (ECF No. 17 at 9.) Dr. Herbick further contends that Johnson's Complaint consists entirely of events occurring before December 27, 2009, and the only date mentioned with respect to Dr. Herbick is 2008 generally. (ECF No. 17 at 9.) Dr. Herbick recognizes the potential applicability of the continuing violations doctrine, but contests its relevance to the issue at bar by suggesting that Johnson was put on notice of his duty to assert any claims well before the statutory period. Specifically, Dr. Herbick contends that the degree of permanence of the alleged mistreatment should have triggered Johnson's awareness of his duty to assert a claim. (ECF No. 17 at 10.)

Johnson argues that any applicable statute of limitations does not bar his claims and, more specifically, that any statute of limitations should be tolled during the mandatory exhaustion of his administrative remedies. (ECF No. 20 at 7.) Johnson further suggests that Chief Magistrate Judge Lenihan's Order and ultimate termination of his original motion to proceed *in forma pauperis* preserves the original filing date of October 26, 2011 rather than

Johnson's corrected and accepted motion, filed December 27, 2011, by its terminology.[2]  (ECF No. 20 at 10.)  Finally, Johnson cites <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) to plead for a generally less stringent reading of his Complaint because he is a *pro se* litigant.

Johnson correctly cites precedential Supreme Court decisions compelling a more lenient evaluation of his Complaint.  Nonetheless, "federal law determines the date of accrual of a section 1983 cause of action, and that the applicable federal law provides that such a cause of action accrues when the plaintiff 'knew or had reason to know of the injury that constitutes the basis of [the] action.'"  <u>Rose v. Bartle</u>, 871 F.2d 331, 348 (3d Cir. 1989).  Therefore, Johnson's cause of action accrues when he knew or should have known of any injury to himself and the two year statute of limitations began running at that time.  Johnson clearly identifies dates of denial of treatment he now seeks to recover upon, thus indicating his knowledge of specific dates of injuries.

With respect to Johnson's Complaint against Dr. Herbick, the latest date referred to is "2008" generally.  The latest possible date the Complaint could have intended to identify is December 31, 2008, thus requiring Johnson to file by December 31, 2010 to be timely.  Further,

---

[2]    Here, October 26, 2011 is the filing date under the "mailbox rule."  Pennsylvania and federal courts employ the prisoner mailbox rule.  See <u>Perry v. Diguglielmo</u>, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing <u>Commonwealth v. Little</u>, 716 A.2d 1287 (Pa. Super. Ct. 1998)); <u>Burns v. Morton</u>, 134 F.3d 109, 113 (3d Cir. 1998).  Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing.  See <u>Burns</u>, 134 F.3d at 113; <u>Commonwealth v. Castro</u>, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).  Further, the Third Circuit has held that "[a]lthough a complaint is not formally filed until the filing fee is paid, we deem a complaint to be constructively filed as of the date that the clerk received the complaint - as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*."  <u>McDowell v. Delaware State Police</u>, 88 F.3d 188, 191 (3rd Cir. 1996).  In addition, the Third Circuit  held that where a prisoner filed an original complaint timely but neglected to file an application to proceed *in forma pauperis* until fourteen months later, after the statutory period had run, the claim was not barred by the statute of limitations because the filing date "relates back to the date [the prisoner] originally filed his complaint…."  <u>Id</u>. at 189.

Exhibit C indicates that any evaluation of Johnson for a lower extremity lump was done by "Chris Meyers" and does not allege specific involvement by Dr. Herbick. (ECF No. 5 at 3.) There is nothing in the Complaint or its exhibits that indicates specific involvement of Dr. Herbick in any treatment beyond "2008," therefore the applicable two year statute of limitations bars this Complaint because it was not filed prior to January 1, 2011. Johnson's contention in regard to preserving his original filing date of October 26, 2011 is thus irrelevant.

With regard to the continuing violation doctrine, not only does Johnson fail to identify any act in violation of his rights within the statutory period, but Dr. Herbick correctly asserts that the degree of permanence factor renders this doctrine inapplicable for this case. That is, any act by Dr. Herbick to deny Johnson's requests for different medical care should have "trigger[ed] [Johnson's] awareness of a duty to assert his...rights." Cowell, 263 F.3d at 292. Because Johnson does not allege any violation of rights for which the continuing violation doctrine could apply in order to relate older claims to claims within the statute of limitations period and Johnson was well aware of his duty to assert his rights as evidenced by Johnson's continuous communications with prison personnel, his claims against Dr. Herbick are barred by the statute of limitations.

In addition, even if Johnson were able to take advantage of equitable tolling of the statute of limitations while he exhausted administrative remedies, his Complaint would still be untimely. Johnson began his exhaustion of administrative remedies with the filing of an inmate grievance on July 9, 2009. (ECF No. 5-1 at 3.) The final appeal decision and end to Johnson's exhaustion of administrative remedy was issued on October 28, 2009. (ECF No. 5-1 at 7.) Johnson filed on October 26, 2011 in accordance with the "mailbox rule." Thus, Johnson filed just two days before the statute of limitations had run even when gaining the advantage of equitable tolling and

14

therefore may preserve only claims for actions taking place July 7, 2009 and later. Because the latest possible date referred to in the Complaint is December 31, 2008, Johnson's claims against Dr. Herbick are barred regardless of equitable tolling.

2.  Failure to State a Claim

Alternatively, Dr. Herbick contends that Johnson has failed to state a claim upon which relief can be granted. Dr. Herbick suggests that even if it is assumed that Johnson has a serious medical need, Johnson's Complaint fails to allege sufficient facts with respect to Dr. Herbick's subjective intent. (ECF No. 17 at 5-6.) That is, Johnson's Complaint does not provide any evidence distinguishing Dr. Herbick's actions as deliberate indifference rather than professional judgment. Further, even if Dr. Herbick's treatment plan amounted to negligence, the deliberate indifference standard is not met.

Johnson contends that Dr. Herbick's actions amount to inadequate treatment or a failure to treat that establishes deliberate indifference. Johnson alleges that Dr. Herbick stated in 2008 that, "[i]f you['re] not having pain, you['re] not getting another clot, so you don't need this [ultrasound] procedure." (ECF No. 5 at 2.) Johnson suggests that because he experienced pain in July, 2009, Dr. Herbick's actions in not performing the ultrasound procedure or utilizing a vascular surgeon to further evaluate Johnson amount to a complete failure to treat. (ECF No. 20 at 7.) Johnson further argues that Dr. Herbick's actions amount to deliberate indifference when Dr. Herbick did not follow a treatment prescribed by a physician who evaluated Johnson prior to incarceration. (ECF No. 20 at 8.) Additionally, Johnson suggests that the failure to have a vascular surgeon evaluate him in July, 2009, amounted to a denial of access to a medical professional. (ECF No. 20 at 8.) Johnson cites Dr. Herbick's repeated treatments, specifically

15

prescriptions for medication, as evidence that Dr. Herbick had actual knowledge of Johnson's serious medical need and deliberately failed to treat. Johnson cites a Fifth Circuit decision, Lawson v. Dallas Cnty., 286 F.3d 257 (5th Cir. 2002) as evidence that prison medical staff may be liable for deliberate indifference where they do not follow treatment instructions given by an outside physician. (ECF No. 20 at 8.)

Johnson's Complaint must include some factual allegations of the two elements required to establish a claim of deliberate indifference; a serious medical need and a culpable mental state establishing deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 294-97 (1991) (citing Estelle, 429 U.S. at 106)). Johnson includes reference to his diagnosis of "deep vein thrombosis," status as a "chronic care inmate," and numerous treatments from Dr. Herbick and other physicians to establish his serious medical need. (ECF No. 5 at 2.) Dr. Herbick does not strongly contest the presence of a serious medical need and Johnson's Complaint, read leniently and taken as true, establishes a serious medical need when it cites diagnosis by a physician as requiring treatment and where a failure to treat results in unnecessary infliction of pain. Lanzaro, 834 F.2d at 347.

However, Johnson's Complaint fails to allege facts that reasonably establish a culpable state of mind for Dr. Herbick. Although deliberate indifference does not require a showing of complete lack of care, it does provide considerable latitude for professional judgment. Farmer, 511 U.S. at 826; Pierce, 612 F.2d at 762. Johnson's Complaint repeatedly acknowledges care and attention given by Dr. Herbick. In fact, Johnson's Complaint is targeted towards identifying where Dr. Herbick's treatment plan deviates from Johnson's treatment plan desires. Nothing in the Complaint suggests that Johnson was ever denied medical evaluation for his concerns and the Complaint outlines direct medical advice from Dr. Herbick, at least one video conference with a

vascular surgeon, evaluation of a lump at Johnson's groin, an X-ray on Johnson's knee, and prescriptions for medication. Although "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment,'" procedures such as X-rays and conferences with vascular surgeons are certainly not the easiest and least efficacious treatment plans. Lanzaro, 834 F.2d at 347 (citing West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). Rather, Johnson's Complaint displays a continuous treatment plan that does not suggest deliberate indifference through emphasis on efficiency.

Further, Johnson's reliance on Lawson is misplaced. It is well established that prison medical staff are not held to the treatment plans of outside medical personnel and that "no claim is stated when a doctor disagrees with the professional judgment of another doctor." Napoleon, 897 F.2d at 110. Lawson merely establishes that where a paraplegic prisoner developed decubitus ulcers readily visible to prison medical personnel and required multiple visits to an outside hospital for treatment arising from the inadequate care, the prison medical personnel should have been aware of the danger to the prisoner and could be found deliberately indifferent. Lawson, 286 F.3d at 264. Johnson does not suffer from a condition as readily visible as paraplegia and the symptoms and outcomes of inadequate treatment are far less obvious than rotting skin and stench. Instead, Johnson suffers from a condition that can cause blood clots which, although perhaps painful and potentially life-threatening, cannot be identified as easily.

Johnson does not allege that any blood clots have developed nor does he allege mistreatment for any actual clots. Johnson instead alleges inadequate preventative care based on his diagnosis and conflicting physician treatment plans. Johnson's Complaint establishes mere disagreement with Dr. Herbick's prescribed treatment plan and does not allege that Dr. Herbick's treatment plan has been ineffectual. Although Johnson alleges pain in his left leg and hip and the

17

development of a lump at the upper inside of his left leg, he acknowledges evaluation of these ailments through exam and X-ray with treatment by prescribed medication. Thus, Johnson's Complaint, by virtue of its repeated citation to treatment given by Dr. Herbick, establishes nothing more than disagreement with a question of sound professional judgment.

For these reasons, Johnson's Complaint should also be dismissed for failure to state a claim against Dr. Herbick. Furthermore, dismissal of Johnson's Complaint against Dr. Herbick should be with prejudice as it is clear from the record that granting Johnson leave to amend his Complaint would be futile.[3]

### D. Defendants Coleman and Tretinik's Motion to Dismiss

Coleman and Tretinik argue that, as administrators and not medical personnel, they are not liable for deliberate indifference where Johnson was receiving treatment from medical professionals. (ECF No. 19 at 3.) Further, they contend that Johnson's Complaint must allege actual knowledge of inadequate care and that responding or viewing prisoner grievances cannot establish the requisite level of personal knowledge. (ECF No. 19 at 4.) In addition, they argue that Johnson must allege some actual involvement in the alleged misconduct and *respondeat superior* cannot be the basis for such involvement. (ECF No. 19 at 5.)

Johnson contends that Coleman and Tretinik's respective replies to his grievances do establish actual knowledge of his serious medical need and mistreatment. The only allegation Johnson levies against Tretinik is that, through Tretinik's evaluation of Johnson's initial

---

[3]     The Court is mindful of the fact that *pro se* pleadings are to be construed liberally, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002).

grievance, Tretinik gained actual knowledge and failed to act upon it. (ECF No. 5 at 3.) Johnson's Complaint does not mention Coleman by name or otherwise in his Statement of the Claim. (ECF No. 5 at 3, 4.)

For Johnson's Complaint to survive Defendants' Motion to Dismiss, it must include allegations of actual knowledge of "a substantial risk of serious harm" and disregard for that risk "by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 825. Further, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" and "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236. The Third Circuit has been clear that responding or reviewing inmate grievances does not establish personal knowledge. Durmer, 991 F.2d at 69; Thomas, 142 F. App'x at 39. Additionally, Coleman and Tretinik correctly identify that "liability cannot be predicated solely on the operation of *respondeat superior*." Dellarciprete, 845 F.2 at 1207.

Johnson fails to state any action taken by Coleman and Tretinik aside from their review and response to inmate grievances. The law is clear that Johnson must allege some facts establishing Coleman and Tretinik's actual knowledge of Johnson's serious medical need and a failure to adequately treat it and that Johnson may not rely on Coleman and Tretinik's review and response of grievances to do so. Farmer, 511 U.S. at 825; Thomas, 142 F. App'x at 39. Johnson's Complaint does not include a specific allegation against Coleman and relies solely on

Tretinik's involvement in reviewing and responding to Johnson's grievance. Thus, Johnson's Complaint should be dismissed for failure to state a claim.[4]

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motions to Dismiss filed by Defendant Dr. Herbick (ECF No. 16) and Defendants Coleman and Tretinik (ECF No. 18) be granted. Furthermore, it is recommended that dismissal of Johnson's Complaint against all Defendants should be with prejudice as it is clear from the record that granting Johnson leave to amend would be futile.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: June 21, 2012

Lisa Pupo Lenihan
Chief United States Magistrate Judge

---

[4] Alternatively, the Court finds that Johnson's claims against Coleman and Tretinik would be barred by the two year statute of limitations if Johnson is not given the advantage of equitable tolling during exhaustion of administrative remedies. First, Johnson cites only to Tretinik's July 13, 2009 response to his inmate grievance in the Complaint. Because Johnson did not file by July 13, 2011, this claim is untimely. Second, Johnson includes no claim against Coleman in his Complaint. However, an extremely lenient reading of the Complaint may infer a claim against Coleman's August 11, 2009 response to Johnson's appeal of Tretinik's decision. Even so, Johnson did not file by August 11, 2011 and thus any implied claim is also untimely. Johnson's continuous pursuit of administrative remedy clearly shows that he was aware of any injury at the time he received these decisions and thus the claim accrued upon their delivery to Johnson. As such, dismissal of Johnson's Complaint against Coleman and Tretinik should also be with prejudice.

cc:  Solomon Johnson
GX-7163
SCI Greensburg
165 SCI Lane
Greensburg, PA 15601

Counsel of record.